No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**ARLEEN CABRAL, individually and on behalf of all others similarly situated,**

*Plaintiff and Respondent,*

vs.

**SUPPLE, LLC,**

*Defendant and Petitioner.*

---

## PETITION FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

---

From an Order of the United States District Court
Central District of California, No. 5:12-cv-00085 MWF (OPx)
The Honorable Michael W. Fitzgerald

---

**MANATT, PHELPS & PHILLIPS, LLP**
BRAD W. SEILING
YOANNA S. BINDER
KRISTIN S. ESCALANTE
JOANNA S. MCCALLUM
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000

*Attorneys for Petitioner*
Supple, LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner Supple, LLC states that it has no parent company and that no publicly held company owns 10 percent or more of its stock.

Dated: February 28, 2013          MANATT, PHELPS & PHILLIPS, LLP


By: s/Brad W. Seiling_____
    Brad W. Seiling
    *Attorneys for Petitioner*
    Supple, LLC

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...............................................1

II.  STATEMENT OF FACTS .....................................................3

III. ARGUMENT ........................................................................5

    A.   The District Court Committed Manifest Error in
         Finding That Common Issues Predominate; Under
         Settled Law, the Fact That Many Customers Make
         Repeat Purchases Precludes Predominance of
         Common Issues..............................................................5

         1.   Satisfied Customers Preclude Class
              Certification...........................................................7

         2.   The District Court Failed to Consider the
              Relevant Law and Evidence................................12

    B.   The District Court Committed Manifest Error in
         Interpreting the Purported Meaning of Various
         Individual Statements and Crystallizing Them Into
         a "Uniform" Representation ..........................................15

IV.  CONCLUSION...................................................................20

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Blair v. Equifax Check Services, Inc.,*
    181 F.3d 832 (7th Cir. 1999)......................................................3, 5

*Campion v. Old Republic Home Protection Co., Inc.,*
    272 F.R.D. 517 (S.D. Cal. 2011) ...............................................8, 14

*Chamberlan v. Ford Motor Co.,*
    402 F.3d 952 (9th Cir. 2005)......................................................3, 5

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011).........................................................6

*Faralli v. Hair Today Gone Tomorrow,*
    No. 1:06 CV 504, 2007 WL 120664 (N.D. Ohio Jan. 10,
    2007)..................................................................................8

*Galvan v. KDI Distribution Inc.,*
    No. SACV-08-0999-JVS (ANx), 2011 WL 5116585 (C.D.
    Cal. Oct. 25, 2011) ...................................................................13

*Green v. Green Mountain Coffee Roasters,*
    279 F.R.D. 275 (D.N.J. 2011).........................................................9

*In re Actimmune Mktg. Litig.,*
    No. CD 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept.
    1, 2010), *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011).........................7

*In re Clorox Consumer Litig.,*
    __ F. Supp. 2d __, 2012 WL 3642263 (N.D. Cal. Aug. 24,
    2012)..................................................................................20

*In re Vioxx Class Cases,*
    180 Cal. App. 4th 116 (2010) .........................................................8

*Johnson v. General Mills, Inc.,*
    275 F.R.D. 282 (C.D. Cal. 2011) .....................................................14

*Johnson & Johnson - Merck Consumer Pharmaceuticals
    Co. v. Smithkline Beecham Corp.,*
    960 F.2d 294 (2d Cir. 1992).........................................................16

*Joseph v. General Motors Corp.,*
    109 F.R.D. 635 (D. Colo. 1986) ...............................................12, 13

# TABLE OF AUTHORITIES
*(continued)*

Page

*Konik v. Time Warner Cable*,
    No. CV 07-763 SVW (RZx), 2010 WL 8471923 (C.D. Cal.
    Nov. 24, 2010)...................................................................................8

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001)............................................................5

*Mahtani v. Wyeth*,
    No. 08-6255 (KSH), 2011 WL 2609857 (D.N.J. June 30,
    2011)...................................................................................................8

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)....................................................15, 20

*Moheb v. Nutramax Laboratories Inc.*,
    No. CV 12-3633-JFW (JCx), 2012 WL 6951904 (C.D. Cal.
    Sept. 4, 2012) .......................................................................9, 10, 12

*National Council Against Health Fraud, Inc. v. King Bio
    Pharmaceuticals, Inc.*,
    107 Cal. App. 4th 1336 (2003) ..................................................11, 12

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011)............................................................8

*Rexall Sundown, Inc. v. Perrigo Co.*,
    651 F. Supp. 2d 9 (E.D.N.Y. 2009) ................................................15

*Tucker v. Pacific Bell Mobile Services*,
    208 Cal. App. 4th 201 (2012) ........................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..........................................................6, 7, 12

*Whitson v. Bumbo*,
    No. C 07-05597 MHP, 2009 WL 1515597 (N.D. Cal. April
    16, 2009) ............................................................................................9

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008)................................................2, 15, 16

# TABLE OF AUTHORITIES
*(continued)*

**Page**

*Williams v. Oberon Media, Inc.,*
    No. CV 09–8764–JFW (AGRx), 2010 WL 8453723 (C.D.
    Cal. April 19, 2010), *aff'd*, 468 Fed. Appx. 768 (9th Cir.
    2012)................................................................................10

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ........................................11

## RULES

Fed. R. Civ. P. 23 ..................................................1, 3, 6, 12

Fed. R. Civ. P. 23(a).........................................................13

Fed. R. Civ. P. 23(b)(3).....................................................13

Fed. R. Civ. P. 23(f) ...........................................................5

## I.    PRELIMINARY STATEMENT

The district court committed manifest error in certifying a class of 61,000 California consumers who purchased Supple®, a dietary supplement whose primary active ingredients are glucosamine and chondroitin (G/C). Rather than conducting the required rigorous Rule 23 analysis, the court uncritically accepted Plaintiff's proffered "net impression" of Defendant's advertising, and ignored uncontradicted evidence that a substantial portion of the putative class was perfectly satisfied with the product.

Plaintiff's class certification theory is that every consumer who bought Supple® believed that Supple® was "clinically proven" to treat arthritis pain, and that this was the only reason anyone would purchase the product. This theory has always had at least two glaring problems that preclude class certification.

*First*, the uncontradicted evidence shows that many – if not most – Supple® purchasers liked the product. Specifically, nearly half of the putative class placed multiple orders for a product that cost nearly $100 per order. These purchases accounted for 79 percent of the total revenues generated from Supple®'s California sales; in other words, 79 percent of the money Plaintiff seeks to recover as damages comes from sales to repeat customers.

The district court acknowledged that this evidence created an inference that these were satisfied customers, but simply ignored that inference, and refused to follow case law that precludes class certification where the evidence shows that putative class members received the benefit of the bargain. This was manifest error.

*Second*, the evidence did not support the district court's finding that the uniform "net impression" of the ads was that Supple® was "clinically proven" to treat arthritis joint pain. Even though that statement never appeared in *any* advertisement during the putative class period, Plaintiff's theory was that *every* consumer interpreted the ads in the same particular and peculiar way. But she provided no evidence to support her interpretation.

The district court committed manifest error in interpreting the advertisements in precisely the way Plaintiff suggested and ignoring the numerous other messages and reasons why a consumer might choose to buy Supple®. This Court has specifically held that the interpretation of advertising is a question of fact, not proper for a court to decide as a matter of law. *See Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008). The only evidence the court cited to support its erroneous and improper finding of a uniform advertising message was two argumentative "summary" exhibits prepared by Plaintiff's counsel. The actual evidence showed a range of other material messages intended to encourage consumers to buy Supple® – including widely known information on the benefits of G/C for joint health, superior quality ingredients, shellfish-free glucosamine, avoidance of products sourced from China, promotion of weight loss, and benefits for bone pain, back pain, muscle pain, overall weakness, and fatigue problems.

The court's tentative ruling acknowledged its concerns and open questions about the impact of satisfied customers and the lack of a uniform message. The final order left these questions unanswered – a complete failure to conduct a rigorous Rule 23 analysis.

Permission to appeal should be granted to correct these manifest errors before the parties and the court expend substantial time and expense to litigate this case on a class basis. The court's ruling is effectively a death knell because Defendant – a small company with only one product – will not have the resources to appeal in the event of an adverse merits ruling. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 834-35 (7th Cir. 1999).

## II.    STATEMENT OF FACTS

Defendant, Supple, LLC, is a small, cause-driven company. Its mission is to advance joint health education and research, and to market premium quality G/C comparable to that sold in Europe, where G/C is regulated as a drug. (Dkt. No. 60, p. 2 ¶ 5.)

Consumers have long had many sources of information about G/C. According to the Centers for Disease Control, doctors recommended G/C to patients more than 6.1 million times in 2009. (Dkt. No. 58, p. 8 ¶ 23; Dkt. No. 59-3, p. 326.) Others have tried G/C at the recommendation of friends. ( Dkt. No. 59-3, p. 326.)

The benefits of G/C have been broadly promoted. (Dkt. No. 36-3, p. 46.) By the time Defendant launched Supple® in early 2008, there was an extensive U.S. market for G/C supplements: sales in 2007 totaled approximately $730 million. (*Id.*, p. 56.)

In 2007, Gallup conducted a study to determine the level of knowledge and use of joint supplements by American adults with joint problems ("Gallup Study"). (Dkt. No. 59-3, p. 326.) The Gallup Study showed that over 70 percent of consumers with joint problems

3

were aware of the use of glucosamine to treat joint problems, and about half had taken it for that purpose. (Dkt. No. 59-3, pp. 217, 231.) Approximately 70 percent of these consumers were satisfied with the glucosamine product they had used.    (Dkt. No. 59-3, p. 339.)  By 2007, before Defendant began marketing Supple®, 93 percent of adults with joint problems who took supplements regularly agreed with the statement:  "Glucosamine has been proven to prevent or relieve joint pain." (Dkt. No. 59-2, p. 126.)

Defendant began actively marketing Supple® in February 2008. (Dkt. No. 60, pp. 4-5 ¶ 12.)  Supple® was sold through various direct marketing channels, including (1) pay-per-click internet advertising; (2) Defendant's websites and affiliate websites; (3) two different half-hour infomercials; (4) outbound telemarketing to former customers; and (5) an associates referral program. (*Id.*)

Defendant's advertising, which varied by channel and advertisement, has always contained a variety of messages, including Supple®'s:  (1) effectiveness in promoting joint health; (2) use of the highest quality ingredients; (3) avoidance of ingredients manufactured in China; (4) rigorous quality control testing; (5) use of a natural, safe drink that tastes good; (6) use of shellfish-free glucosamine; (7) inclusion of ten vitamins and minerals; (8) effectiveness in treating bone, back, muscle and fatigue problems; (9) promotion of weight loss; and (10) money-back guarantee. (Dkt. No. 60, pp. 5-6 ¶ 13; Dkt. No. 60, p. 11 ¶ 29.)  Defendant supported its efficacy claims with statements adopted from scientific studies and satisfied customer testimonials. (Dkt. No. 60, pp. 5-6 ¶ 13.)

## III.  ARGUMENT

Review under Rule 23(f) is appropriate where a class certification decision is manifestly erroneous. *Chamberlan*, 402 F.3d at 959. "Where a district court's certification decision is manifestly erroneous and virtually certain to be reversed on appeal, the issues involved need not be of general importance, nor must the certification decision constitute a 'death knell' for the litigation. Such a rule would waste, rather than conserve, judicial resources . . . ." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 145 (4th Cir. 2001). Moreover, where, as here, the requested class judgment is of such magnitude that it may force a small defendant to settle or go out of business, interlocutory review of class certification is appropriate. *See Blair*, 181 F.3d at 834-35. Rule 23(f) review is warranted here.

### A.  The District Court Committed Manifest Error in Finding That Common Issues Predominate; Under Settled Law, the Fact That Many Customers Make Repeat Purchases Precludes Predominance of Common Issues.

The evidence demonstrated that at least half of Supple® customers were satisfied with the product. The law dictates that where the putative class would include a substantial number of satisfied customers, class certification must be denied.

The district court acknowledged this bedrock legal principle and cited *nine* cases standing for the proposition that "class certification has been denied because the evidence demonstrated that absent class members benefitted from the product at issue or otherwise suffered no injury and lacked standing to sue." (Dkt. No. 103, p. 4:1-4, 4:12-5:20.) The court further noted that "[t]he fact that

5

most customers purchased the Beverage multiple times arguably does give rise to an inference that at least some of these customers were satisfied and/or that the Beverage was in some sense 'effective.'" (*Id.*, p. 5:23-25.) The district court identified no other possible inference that could be drawn from this evidence, and Plaintiff offered no evidence to support a contrary inference or explain why consumers would continue to pay $100 for something that allegedly did not work.

Nonetheless, the district court ignored this law and uncontradicted evidence, effectively deeming them relevant only to the "merits question." (*Id.*, p. 4:4.) But according to the Supreme Court, the "merits question" cannot be divorced from commonality analysis. Rule 23's requirements frequently "will entail some overlap with the merits of the plaintiff's underlying claim . . . [because] '[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 974, 980-82 (9th Cir. 2011) (remanding where district court failed to conduct a "rigorous analysis" of the evidence; "Instead of judging the persuasiveness of the evidence presented, the district court seemed to end its analysis of the plaintiffs' evidence after determining such evidence was merely admissible."). The district court committed manifest error by failing to analyze and apply these concepts.

### 1. Satisfied Customers Preclude Class Certification.

Class certification is appropriate only where the "common contention . . . [is] of such a nature that it is capable of classwide

resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. [¶] 'What matters to class certification . . . is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Wal-Mart*, 131 S.Ct. at 2551 (citation omitted). In other words, the class members must have suffered the *same injury* by the defendant's alleged conduct. *Id.*

Class members have not suffered the "same injury" when a substantial number were satisfied with the product. A "consumer protection suit will not lie where a plaintiff actually receives the 'benefit of the bargain.'" *In re Actimmune Mktg. Litig.*, No. CD 08-02376 MHP, 2010 WL 3463491, at *9 n.2 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011). If a defendant "promoted [the product] as an effective treatment for [a condition] and it was, in fact, an effective treatment for [the condition], plaintiffs would have received exactly what they sought." *Id.*[1]

Such a person has suffered no injury at all, let alone the "same"

---

[1] Here, as discussed below, Defendant promoted a variety of qualities – such as quality of ingredients, weight loss benefits, shellfish-free G/C, and relief from bone, back, muscle, weakness, and fatigue problems – that were unrelated to efficacy for treating joint pain, but that may have been the reason that particular consumers purchased Supple®. This is particularly true of consumers who already were aware of the published benefits of G/C or were shopping for a suitable G/C supplement on the recommendation of their doctor.

injury as the class representative and all other class members. Class certification is precluded in such cases. *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 132-36 (2010) (common issues did not predominate because whether Vioxx was safer or more effective than alternative drugs required individualized determination; alleged statements were not untrue as to all class members where some doctors would have prescribed the drug despite certain safety concerns); *Konik v. Time Warner Cable*, No. CV 07-763 SVW (RZx), 2010 WL 8471923, at *9 (C.D. Cal. Nov. 24, 2010) (denying certification when plaintiffs "failed to meet their burden of presenting sufficient evidence to support a conclusion that the challenged statements were actually false as applied to all (or even most) class members"); *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517, 531, 533 (S.D. Cal. 2011) (certification denied when some consumers obtained the promised benefits).[2]

---

[2] *See also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (that many consumers remained enrolled in program and were apparently satisfied with it was relevant to predominance issue); *Faralli v. Hair Today Gone Tomorrow*, No. 1:06 CV 504, 2007 WL 120664, at *12 (N.D. Ohio Jan. 10, 2007) (denying certification in false advertising case regarding hair removal product, because determining whether any individual consumer had a claim would depend on the "customer's actual hair removal result as well as the customer's subjective view about the success of the treatment"); *Mahtani v. Wyeth*, No. 08-6255 (KSH), 2011 WL 2609857, at *8-*9 (D.N.J. June 30, 2011) (individual issues precluded class certification where studies indicated that product was effective for most consumers); *Green v. Green Mountain Coffee Roasters*, 279 F.R.D. 275, 284-85 (D.N.J. 2011) (striking class allegations where predominance could not be established because many consumers did not experience the product defect and received benefit of the bargain);

8

Another court in the Central District recently denied class certification in a case nearly indistinguishable from this one. In *Moheb v. Nutramax Laboratories Inc.*, No. CV 12-3633-JFW (JCx), 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012), the putative class representative claimed that the defendant had misled the class about the benefits of another G/C supplement. The court ruled that common issues did not predominate where the class would "include members who derived benefit from Cosamin and are satisfied users of the product." *Id.* at *3, *7. In *Moheb*, unlike this case, every consumer necessarily received a uniform message because the allegedly false statements appeared on the label of a product sold at retail; even so, the court found individual issues predominated.

The *Moheb* court rejected the plaintiff's contention that the falsity of the alleged claims was subject to common proof: "Scientific data suggests that Cosamin works for some, but may not work as well for others . . . . The proposed class also does not distinguish between those who experienced moderate-to-severe pain as opposed to mild pain. Moreover, the proposed class does not distinguish between persons with different joint pain locations . . . , different pain causes . . . , different consumption  . . . ., or different underlying health conditions that could affect Cosamin's efficacy . . . . Medical studies control for such factors among participants precisely because they can

---

*Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 WL 1515597, at *6 n.5 (N.D. Cal. April 16, 2009) (plaintiff lacked standing under benefit of the bargain theory where she had not experienced product defect; however, if she did have standing, individual issues "might render her case inappropriate for class-action treatment").

effect [sic] results. Therefore, the 'proof by medical studies' that Plaintiff proposes to present on behalf of the entire class is, at best, only relevant to the truth of Defendant's representations as to some class members . . . ." *Id.* at \*4. The court also noted that "the existence of economic injury is also not a common question, because many purchasers are satisfied. ([citations] (*e.g.*, reviews say 'Worth every penny!' and '100% worth it')." *Id.*

This settled legal principle concerning satisfied customers should have dictated the result here. The evidence shows that 48 percent of putative class members made multiple purchases of Supple®, some as many as 50 orders, comprising 79 percent of total California sales. (Dkt. No. 57-2, p. 1; Dkt. No. 57-4, p. 1.) A single order of Supple® typically contains two cases with 48 single-serving cans (weighing almost 30 pounds) and costs more than $90. (Dkt. No. 57, p. 5 ¶ 17.) These customers would not have continued to pay for each shipment if they were not satisfied.[3] It cannot be presumed that any of these customers continued to buy Supple® because they were misled by advertising that they may have seen months before their second, fifth, or tenth purchase.

More than 1,000 Supple® customers have submitted

---

[3] Even if some class members made multiple purchases because they forgot to cancel their auto-ship deliveries, as Plaintiff argued, the determination of which customers fell into that category would raise additional individual issues. *See Williams v. Oberon Media, Inc.*, No. CV 09–8764–JFW (AGRx), 2010 WL 8453723, at \*4, \*9 (C.D. Cal. April 19, 2010) (individual issues raised when class members forgot to cancel membership in automatic payment program), *aff'd*, 468 Fed. Appx. 768 (9th Cir. 2012).

testimonials praising the product and describing positive results. (Dkt. No. 60, pp. 14-16 ¶ 40.)   Nineteen percent of California customers made repeat purchases in response to Defendant's outbound telemarketing campaign, which sought to induce former customers to make additional purchases by offering discounts or obtaining updated billing information – decisions based on the customers' experience with the product, not as a result of advertisements they may have seen previously. (Dkt. No. 57-2, p. 1.)

Plaintiff, who had the evidentiary burden, produced *no evidence* of complaints about Supple®'s effectiveness, other than her own conclusory statements.[4]  In reply, she submitted Defendant's customer refund log, which shows that only a tiny fraction (2.25 %) of purchasers claimed "no results."  Those people received refunds. (Dkt. No. 68, p. 2 ¶ 3; Dkt. No. 68-1.)  In fact, Defendant's money-back guarantee exists specifically to address dissatisfaction with the product.[5]

---

[4] Plaintiff argued that Defendant had not submitted sworn declarations of satisfied customers.  This misapprehends the burden of proof.  It is Plaintiff's burden to submit evidence supporting her theory that the merits could be proven by classwide evidence.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Defendant, in contrast, had no evidentiary burden.  *See National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1342 (2003) ("there is no basis in California law to shift the burden of proof to a defendant in a representative false advertising and unlawful competition action").

[5] The court indicated that the money-back guarantee does not make dissatisfied customers whole because the refund does not include shipping and handling costs. (Dkt. No. 103, p. 10:19-25.)  But a suit to recover shipping and handling costs would be a very different class action, as it would be focused on Defendant's refund policies, not

11

In addition, the scientific studies support the conclusion that Supple® was effective for many people. (Dkt. No. 58, pp 9-11 ¶¶ 29, 34.) This is exactly the sort of evidence the *Moheb* court relied on to deny certification. Even Plaintiff's own expert witness concluded that the scientific evidence on effectiveness is conflicting.[6] (Dkt. No. 58, pps. 9-13 ¶¶ 26-40.)

### 2.    The District Court Failed to Consider the Relevant Law and Evidence.

The district court's efforts to distance itself from on-point law and unassailable evidence fall far short of a rigorous Rule 23 analysis.

First, the court relied on a 1986 district court case from Colorado (not cited by either party) to conclude that the presence of satisfied customers did not preclude class certification. *See* Dkt. No. 103, p. 5:25-6:5 (citing *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986)). Apart from its questionable bearing on a case in this Circuit, the decision predates *Wal-Mart* by 25 years and thus does not follow its dictates for rigorous Rule 23 analysis. *Joseph* also never addressed whether common issues can predominate when many class members received the benefit of the bargain. *Joseph*'s

---

dissatisfaction with the product.

[6] A trial of this case would be a parade of experts offering conflicting interpretations of various scientific studies, asking the jury to act as industry regulators and to effectively second-guess the international regulatory experts that have granted G/C drug status in many European countries. Because Plaintiff could only prevail if she proves that the alleged statements are false or misleading, any study concluding that the product effectively treats arthritis or joint pain as to any users would mandate a directed verdict for Defendant. *See National Council Against Health Fraud*, 107 Cal. App. 4th at 1340.

discussion of "satisfied customers" was in the context of the numerosity and typicality elements of Rule 23(a), not commonality under Rule 23(b)(3). *Joseph*, 109 F.R.D. at 641-42. Moreover, auto owners who did not experience engine problems from a design defect are not "satisfied" in the same sense as one who makes multiple purchases of the same product.

The district court also cited *Galvan v. KDI Distribution Inc.*, No. SACV-08-0999-JVS (ANx), 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011), as support for its decision to ignore the evidence of satisfied customers. (Dkt. No. 103, p. 6:6-12.) In *Galvan*, the court certified a class of consumers based on an allegation that the defendant deceptively misrepresented how it calculated calling card minutes.[7] The district court quoted the section of *Galvan* discussing ascertainability, which Defendant did not even contest here. The *Galvan* court's discussion of commonality did not address how evidence that a substantial portion of the class received the bargained-for benefit might impact classwide proof of deception or injury.

The district court attempted to distinguish the lengthy list of cases precluding class certification on evidence like that here, stating its view that "[c]lass-wide harm nevertheless can be established through common proof." (Dkt. No. 103, p. 6:16-17.) But those class members for whom the alleged representations were *not false* suffered *no harm*. So even if Plaintiff could prove that the alleged

---

[7] *Galvan* is in this respect contrary to *Tucker v. Pacific Bell Mobile Services*, 208 Cal. App. 4th 201, 221 (2012), where the California Court of Appeal denied class certification in a case alleging that a telephone company misrepresented how it calculated airtime minutes.

representations were false as to her and that she had been harmed, those same questions would still be wide open, and require individualized proof, for every other class member. That is not proving classwide harm on common proof. *Cf.* Dkt. No. 103, p. 6:17-20 (citing *Campion*, 272 F.R.D. at 532).

Finally, *Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011), does not address the core inquiry of whether the prevalence of satisfied customers defeats certification. In *Johnson*, the court certified a false advertising claim directed at retail marketing and labeling of yogurt that allegedly promoted digestive health. Nowhere does the *Johnson* court discuss whether there were satisfied customers who experienced better digestive health or whether they bought the product for other reasons. Because *Johnson* did not address the core issue presented here, it cannot be authority for "distinguishing" the on-point cases.

In addition, the allegedly false statements in *Johnson* appeared on the label of a product sold only at retail, so there was no question that all consumers were exposed to a uniform message that distinguished the defendant's yogurt from other yogurt. Here, Plaintiff does not claim Defendant made false statements in an effort to distinguish Supple® from other G/C products, but rather that it made false statements about the benefits of G/C itself. Such statements, as discussed below, would have been immaterial to consumers already aware of the benefits of G/C.

For these reasons, the district court's order failed to apply the required legal analysis and was manifestly erroneous.

**B.    The District Court Committed Manifest Error in Interpreting the Purported Meaning of Various Individual Statements and Crystallizing Them Into a "Uniform" Representation.**

Plaintiff's theory is that the sole uniform message of Defendant's ads was that Supple® is "clinically proven" to treat arthritis or joint pain, and that every purchaser of Supple® suffered from those conditions and bought Supple® only for that reason. No Supple® ad actually uses the words "clinically proven to treat arthritis or joint pain." Plaintiff's only evidence to support this interpretation was her own testimony regarding the 2007 infomercial – only one of numerous ads during the putative class period. Plaintiff submitted no evidence that a single other consumer formed that impression.[8] She submitted no evidence that any other consumer bought Supple® to treat arthritis or joint pain, or that any other member of the putative class even had arthritis or joint pain.

The court was not entitled to interpret the meaning of the ads itself – let alone deem that meaning the sole and exclusive uniform message necessarily perceived by *all* class members. *See Williams*, 552 F.3d at 938-39. Without proof of a uniform misrepresentation to the class, a class cannot be certified. *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012).

In *Williams*, 552 F.3d 934, this Court specifically held that trial courts in false advertising cases cannot interpret the meaning of

---

[8] *See, e.g., Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 23-24 (E.D.N.Y. 2009) ("It is well settled that, when bringing suit on a theory of implied falsity, a plaintiff must provide extrinsic evidence to support a finding that consumers do take away the misleading message alleged.").

allegedly false advertisements as a matter of law:

> [T]he district court based its decision to grant the motion to dismiss *solely on its own review of an example of the packaging.* It is true that "the primary evidence in a false advertising case is the advertising itself." California courts, however, have recognized that *whether a business practice is deceptive will usually be a question of fact* not appropriate for decision on demurrer.

*Id.* at 938-39 (emphasis added; citations omitted); *see also Johnson & Johnson - Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297-98 (2d Cir. 1992) ("It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive. Rather, . . . '*[t]he question in such cases is – what does the person to whom the advertisement is addressed find to be the message?*'") (emphasis in original). Neither Plaintiff nor the court cited any authority that would allow a court to adopt a "net impression" of advertisements and then conclude that its adopted impression created a common question that justified class certification.

The question is not, as the court framed it, whether every consumer was exposed to Defendant's advertising.[9] The question is whether every consumer was exposed to the identical message *as the court interpreted it.*

This is not a typical false advertising case where the only

---

[9] Plaintiff also reformulated the issue as whether all purchasers were "exposed" to the ads. But Defendant never argued that purchasers might not have seen any advertising materials. Rather, the point is what exactly were they exposed to? As shown, there was no uniform message of the kind assumed by Plaintiff and the court.

information about the product comes from the ads. Many consumers made the decision to take a G/C supplement based on doctor recommendations or publicized studies, and viewed Supple®'s advertising only when choosing among alternative G/C products. For such consumers, the variety of messages that have nothing to do with clinical proof, arthritis, or joint pain – such as that Supple®'s component elements were of superior quality to competing supplements; that they were made from products not purchased in China; that they contain no shellfish; that the drink tastes good; that Supple® promotes weight loss; and that Supple® can also help with bone, back, and muscle weakness and fatigue problems – become more pronounced (or even determinative). In sum, Defendant was not writing on a clean slate when it advertised a G/C supplement to consumers who already have pre-conceived notions about the benefits and efficacy of G/C. So this is not a case, as the court found, where the defendant seeks to avoid class certification by making minor changes in its ads. The numerous varied messages in Defendant's ads changed over time and differed by medium. The district court ignored this evidence and instead concluded that there was only one conceivable reason why people would buy Supple®. This was manifest error.

As Plaintiff's own evidence shows, the wording and the messages conveyed in Supple®'s advertising varied by medium and over time. For instance, the 2007 infomercial included weight loss and back problem claims and touted the quality of Supple®'s ingredients compared to other products, in addition to discussing the benefits of G/C. The 2011 infomercial differed materially from the

17

2007 infomercial as it did not promote weight loss, it presented testimonials from 20 customers with various health conditions (there were no customer testimonials in the 2007 show), and it discussed how Supple® can also help people with bone, back, muscle, weakness, and fatigue problems. (*Id.*)

Defendant's click-through banner ads (nearly 300), which drive traffic to Defendant's websites, contain a variety of messages targeted to specific audiences. Many of the banners merely offered discounts, and others contained a variety of brief messages about Supple®'s benefits. Traffic to Defendant's websites and landing pages has been extensive. During the putative class period, there have been almost 2.5 million visits to various (more than a dozen) Defendant-sponsored websites and landing pages. (Dkt. No. 60, p. 9 ¶ 24.)

Nineteen percent of the putative class (representing 31 percent of California sales) responded to outbound telemarketing targeted at former customers who had discontinued orders due to price or outdated billing information. (Dkt. No. 57-2, p. 1.) These consumers bought in response to individual telemarketing appeals and made new purchasing decisions based on their own personal experience with Supple®. (Dkt. No. 60, p. 13 ¶ 36.)

The inbound (new sales) telemarketing scripts also highlight how customers do not receive the same information when they make their purchasing decision. *See* Dkt. No. 36-6, p. 36 ("Does this cure arthritis? There is no known cure for arthritis. Supple provides your body with the building blocks of your joints and helps to restore your joints to a healthy, normal function."). That customers may receive additional information during their individual sales calls reinforces the

notion that not all customers receive a uniform message.

The district court ignored this evidence, instead citing only two exhibits (out of more than 100 submitted by both parties) to conclude that Defendant's ads conveyed a single uniform message. Both exhibits were argumentative summary charts prepared by Plaintiff's counsel – not the actual ads themselves.[10] The charts included only the representations Plaintiff's counsel selected, and omitted numerous other representations establishing lack of uniformity.

One of the statements the court highlighted in its order appeared in a test version of a single Supple® website that was used only briefly in early 2007 (before the putative class period and before Supple® was actively marketed) and resulted in only de minimis sales.[11] That hardly shows a uniform message presented to class members, and the court's reliance on such a statement highlights the lack of rigor in its certification analysis.

Other statements the court cited similarly did not support its interpretation of the supposed uniform message that Supple® was clinically proven to treat joint pain. (Dkt. No. 103, p. 7:9-11.) For example, the court singled out the statement "[i]f you have arthritis, joint pain, back pain, kne[e] pain, this is a product you absolutely

---

[10] (Dkt. No. 103, p. 7:19-24 (citing Wade Decl. Ex. 14, a chart prepared by Plaintiff's counsel, *see* Dkt. No. 36 p. 3 ¶ 16); *id.*, p. 7:24-28 (citing Wade Decl. Ex. 22, a chart prepared by Plaintiff's counsel, *see* Dkt. No. 36, p. 4 ¶¶ 24-25).) Exhibit 22, which purports to summarize statements from websites, includes statements from at least one website that Defendant did not own or operate, and did not control the messages presented.

[11] (Dkt. No. 36-2, pp. 86, 88; Dkt. No. 60, p. 10 ¶ 26.)

have to try," which clearly conveys no message whatsoever relating to clinical proof. (Dkt. No. 103, p. 7:20-21.) Such a statement is akin to puffery or simple introductory language, which is not actionable. *See In re Clorox Consumer Litig.*, __ F. Supp. 2d __, 2012 WL 3642263, at *5 (N.D. Cal. Aug. 24, 2012). Only by stringing that statement together with other statements and imposing its (and Plaintiff's) particular and peculiar interpretation could the court find the "uniform" message cited in the order.

To certify a class based on misrepresentation, a plaintiff must prove the alleged misrepresentation was uniformly made to all members of the proposed class. *Mazza*, 666 F.3d at 595. The court failed to apply this rule and committed manifest error in doing so.

## IV.    CONCLUSION

The district court erroneously certified a class in a consumer action where the evidence showed many putative class members were satisfied with the product, and where the court found a uniform representation only by impermissibly interpreting the actual statements made. Defendant requests that the Court grant this Petition and allow the appeal to correct this manifest error.

Dated:  February 28, 2013            MANATT, PHELPS & PHILLIPS, LLP


                              By: s/Brad W. Seiling _____
                                   Brad W. Seiling
                                   *Attorneys for Petitioner* Supple, LLC

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10
ARLEEN CABRAL, et al.,              CASE NO. ED 12-00085-MWF (OPx)
11
        Plaintiffs,               **ORDER GRANTING PLAINTIFF**
12                                **CABRAL'S MOTION FOR CLASS**
13   vs.                          **CERTIFICATION [35]**

14   SUPPLE, LLC, et al.,

15        Defendants.

16

17

18        This matter is before the Court on the Motion for Class Certification (the

19   "Motion") filed by Plaintiff Arleen Cabral. (Docket No. 35). The Court has read

20   and considered the papers filed on this Motion and held a hearing on December 3,

21   2012. (*See* Docket No. 90). For the reasons stated below, the Motion is

22   GRANTED.

23                          **BACKGROUND**

24        As this Court twice has discussed on the motions to dismiss filed by

25   Defendant Supple, LLC ("Supple"), this action relates to Supple's sales, marketing

26   and distribution of the Supple Beverage (the "Beverage"). (*See* Docket Nos. 29,

27   49). The gravamen of Cabral's First Amended Complaint ("FAC" (Docket No. 33))

28

                                    1

1   is that Supple claims the Beverage's key ingredients – *i.e.*, glucosamine

2   hydrochloride and chondroitin sulfate – are clinically proven effective, produce

3   evidence-based solutions for joint problems, and provide fast relief from joint

4   suffering caused by ailments such as arthritis.  However, Cabral alleges that a series

5   of clinical trials demonstrate that the combination of these ingredients is no more

6   effective than placebo.

7       Cabral alleges that she purchased the Beverage after viewing Supple's

8   infomercial in 2009.  The FAC alleges claims for relief for violation of the

9   following statutes:  (1) California's Unfair Competition Law ("UCL"), Cal. Bus. &

10  Prof. Code § 17200 *et seq.*; (2) California's False Advertising Law ("FAL"), Cal.

11  Bus. & Prof. Code § 17500 *et seq.*; and (3) California's Consumer Legal Remedies

12  Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

13      On this Motion, Cabral seeks to certify the following statewide class:  All

14  persons residing in the State of California who purchased Supple for personal use

15  and not for resale since December 2, 2007.

16                          **LEGAL STANDARD**

17      The party seeking class certification bears the burden of showing that each of

18  the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of

19  the requirements of Rule 23(b) are met.  *See Hanon v. Dataprods. Corp.*, 976 F.2d

20  497, 508-09 (9th Cir. 1992).  Rule 23(a) sets forth four prerequisites for class

21  certification, commonly referred to as numerosity, commonality, typicality and

22  adequacy of representation.  *Hanon*, 976 F.2d at 508.

23      "In determining the propriety of a class action, the question is not whether the

24  plaintiff has stated a cause of action or will prevail on the merits, but rather whether

25  the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

26  178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (internal quotation and citations

27  omitted).  Therefore, the Court considers the merits of the underlying claims to the

28  extent that the merits overlap with the Rule 23(a) analysis but does not conduct a

2

1   "mini-trial" or determine at this stage whether Cabral actually could prevail. *Ellis v.*
2   *Costco Wholesale Corp.*, 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

3        Cabral moves for certification pursuant to Rule 23(b)(3).  Under Rule
4   23(b)(3), a plaintiff seeking to certify a class must show that questions of law or fact
5   common to the members of the class "predominate over any questions affecting only
6   individual members, and that a class action is superior to other available methods for
7   the fair and efficient adjudication of the controversy." *Id.*

8   **DISCUSSION**

9        As a preliminary matter, Supple does not contest numerosity.  Supple's
10  argument against commonality is intertwined with its argument as to predominance
11  – particularly on the question whether Supple's marketing and advertising
12  constitutes a "uniform message."  While Supple makes passing arguments as to
13  typicality and adequacy (and superiority), the briefing and the hearing largely
14  focused on predominance.  For this reason, the Court turns first to this question.
15  (The Court also notes that in their briefing and at the hearing the parties did not
16  differentiate among the three statutory bases for relief in the FAC.)

17  **Predominance (Rule 23(b)(3))**

18       As noted above (and in the Court's prior motion to dismiss orders), the FAC
19  alleges that Supple promoted the Beverage as clinically proven effective in treating
20  joint pain such as that caused by arthritis.  According to the FAC, this claim is false
21  and/or misleading.  Supple advances four arguments as to why this claim does not
22  satisfy Rule 23(b)(3).

23       Supple argues that common questions of fact do not predominate because (1)
24  the Beverage is effective and class members therefore were not misled; (2) Cabral
25  has not demonstrated that class members were exposed to the advertisement on
26  which she bases her claim; (3) materiality varies among class members; and (4)
27  reliance cannot be presumed on a class-wide basis.

28

3

1      **(1)**    Supple is correct that a "consumer protection suit will not lie where a

2 plaintiff actually receives the 'benefit of the bargain.'" *In re Actimmune Mktg.*

3 *Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at \*9 n.2 (N.D. Cal. Sept. 1,

4 2010). But this is a merits question as much as a predominance question. Indeed, *In*

5 *re Actimmune*, on which Supple relies, is a decision on a motion to dismiss and not

6 for class certification. *See id.*

7      Nevertheless, the thrust of Supple's opposition to the Motion is that the

8 "evidence here shows that the putative class includes a substantial number of

9 satisfied customers, which demonstrates that individual issues predominate." (Opp.

10 at 9). This argument rests only on the fact, which Cabral concedes, that "most

11 customers purchase[d] the [Beverage] multiple times." (*See* Opp. at 11; Mot. at 9).

12      Supple cites a raft of cases in which class certification has been denied

13 because the evidence demonstrated that absent class members benefitted from the

14 product at issue or otherwise suffered no injury and lacked standing to sue. *See*

15 *Moheb v. Nutramax Labs.*, CV 12-3633-JFW (JCx), slip op. at 3-4 (Sept. 4, 2012)

16 ("In this case, the Class will include members who derived benefit from Cosamin

17 and are satisfied users of the product. However, '[s]uch members have no injury

18 and no standing to sue.'" (citation omitted)); *Hovsepian v. Apple, Inc.*, No. 08-5788

19 JF (PVT), 2009 WL 5069144, at \*6 (N.D. Cal. Dec. 17, 2009) ("[T]he class is not

20 ascertainable because it includes members who have not experienced any problems

21 with their iMac display screens. Such members have no injury and no standing to

22 sue."); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D.

23 Cal. 2010) ("Defendants argue that because the class does not exclude persons who

24 already have received refunds or replacement parts or who have not suffered any

25 damages at all, it is not ascertainable. The Court agrees."); *Bishop v. Saab Auto.*

26 *A.B.*, No. CV 95-0721 JGD(JRX), 1996 WL 33150020, at \*5 (C.D. Cal. Feb. 16,

27 1996) ("The courts have refused to certify class actions based on similar 'tendency

28 to fail' theories because the purported class includes members who have suffered no

4

1   injury and therefore lack standing to sue." (citations omitted)); *Akkerman v. Mecta*

2   *Corp.*, 152 Cal. App. 4th 1094, 1101, 62 Cal. Rptr. 3d 39 (2007) (class definition

3   "would require a windfall award of restitution to all who received [therapy at issue]

4   even if the procedures were successful and beneficial"); *In re Vioxx Class Cases*,

5   180 Cal. App. 4th 116, 133-34, 103 Cal. Rptr. 3d 83 (2009) ("evidence indicated

6   that Vioxx did not present 'an increased risk of death' . . . for all patients"); *Konik v.*

7   *Time Warner Cable*, No. CV 07-763 SVW (RZx), 2010 WL 8471923, at *9 (C.D.

8   Cal. Nov. 24, 2010) ("The evidence presented to the Court establishes that a large

9   component of the proposed class did not experience any raises in price or

10  deprivations in service. . . . Plaintiffs do not dispute the substance of this

11  evidence."); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 533 (S.D.

12  Cal. 2011) ("A determination as to whether class members were harmed . . . requires

13  review of the particular circumstances pertaining to the handling of each class

14  member's claim to assess whether the claim was approved or denied and, if it was

15  denied, whether the denial was legitimate."); *Faralli v. Hair Today, Gone*

16  *Tomorrow*, No. 1:06 CV 504, 2007 WL 120664, at *8 (N.D. Ohio Jan. 10, 2007)

17  (reasoning that "the end result of the treatment is critical to determining which

18  customers suffered damage as a result of the false representation. That is, those who

19  suffered damage would be those who relied on the statement that the hair would be

20  permanently reduced or eliminated, but in fact it was not.").

21      These cases are distinguishable both factually and legally. ***Factually***, the

22  record does not demonstrate that there are a "substantial number of satisfied

23  customers." The fact that most customers purchased the Beverage multiple times

24  arguably does give rise to an inference that at least some of these customers were

25  satisfied and/or that the Beverage was in some sense "effective." But this (arguable)

26  inference does not threaten class ascertainability or demonstrate that most or all

27  potential class members lack of standing. *See, e.g., Joseph v. Gen. Motors Corp.*,

28  109 F.R.D. 635 (D. Colo. 1986) ("[T]he fact that the class may initially include

1  persons who have not had difficulties with the [relevant product] or who do not wish
2  to have these purported problems remedied is not important at this stage of the
3  litigation, unless, of course, it is shown that most, if not all, of the potential class
4  members have no claims to be asserted by the class representatives." (citations
5  omitted) (cited in 6 William B. Rubenstein, Alba Conte & Herbert B. Newberg,
6  *Newberg on Class Actions* § 21:32 n.3 (4th ed. 2012)); *Galvan v. KDI Distrib. Inc.*,
7  No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011)
8  ("In this case, the class definition may include individuals who did not perceive that
9  they were short changed by the minutes provided on their calling cards, individuals
10 who do not wish to pursue action, and individuals that have inadequate proof to go
11 forward with the class. However, . . . these ascertainability issues are not fatal to
12 class certification and may be addressed later in the litigation.").

13      ***Legally***, even accepting the premise that some repeat customers are satisfied
14 customers (or at the very least that there are individual issues as to why repeat
15 customers purchased the Beverage multiple times), common issues of fact and law
16 still predominate.  Class-wide harm nevertheless can be established through
17 common proof.  *Cf., e.g., Campion*, 272 F.R.D. 517, 532 ("Plaintiff's efforts to
18 certify the class break down under a causation analysis, as it is apparent that the
19 causal link between Defendant's alleged unlawful business practices and any harm
20 suffered by class members can not be established on a class-wide basis.").

21      In this regard, *Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal.
22 2011), is instructive:

23      common issues of great importance to this litigation are also subject to
24      classwide litigation and common proof, further evidencing that common
         issues predominate.  Most importantly, General Mills could defeat the
25      claims of the entire class by proving that YoPlus promotes digestive
26      health in the manner that General Mills allegedly represented.  The
         digestive health benefit of YoPlus, or the lack thereof, is a common issue
27      that is particularly appropriate for classwide resolution because it will

28

1    turn on complex and expensive scientific evidence and expert testimony.

2        . . .

3  *Id.* at 289.

4        The truth or falsity of Supple's advertising will be determined on the basis of

5  common proof – *i.e.*, scientific evidence that the Beverage is "clinically proven

6  effective" (or not) – rather than on the question whether repeat customers were

7  satisfied or received multiple shipments of the Beverage because of automatic

8  renewals.

9        **(2)**    Supple argues that its advertising does not amount to the "uniform

10  message" described above – *i.e.*, that the Beverage is clinically proven effective in

11  treating joint pain. But, as in other consumer protection cases, the fact that Supple

12  may have marketed the Beverage through different statements in order to convey

13  this message is not dispositive. *See, e.g.*, *Johnson*, 275 F.R.D. 282, 289 ("[T]he

14  common issue that predominates is whether General Mills' packaging and

15  marketing communicated a persistent and material message that YoPlus promotes

16  digestive health."); *cf. Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th

17  Cir. 2012) (stating that class cannot be certified where "it is likely that many class

18  members were never exposed to the allegedly misleading advertisements").

19        Cabral has introduced evidence that Supple's infomercial states, for example:

20  "If you have arthritis, joint pain, back pain, kne[e] pain, this is a product you

21  absolutely have to try"; "Our glucosamine is clinically proven to rebuild damage[d]

22  cartilage cells"; "It's our chondroitin that's clinically proven effective to reduce

23  joint space narrowing, that's clinically proven to reduce swelling and inflammation,

24  and that protects your joints." (Wade Decl. Ex. 14 (Docket No. 36)). Cabral also

25  has introduced evidence of comparable statements on Supple's website, for

26  example: "Clinically Proven Effective and Safe"; "[C]ompletely relieve the

27  symptoms of arthritis." (*Id.* at Ex. 22).

28

1    In addition, the record evidence indicates that from December 1, 2007, to
2  November 20, 2011, approximately $8.9 million of the revenue from Supple's sale
3  of the Beverage was generated from direct telephone sales (Supple's infomercial
4  includes "1-800" telephone numbers for viewers then to purchase the Beverage).
5  (*Id.* at Ex. 2). The remaining $1.4 million in revenue was generated from online
6  sales. (*Id.*) Supple did not sell to retail merchandisers.

7    Consequently, class members purchased the Beverage either over the
8  telephone after viewing the Supple infomercial or from the Supple website. The
9  Beverage label also appeared on the Supple website. (*See, e.g., id.* at Ex. 23, 24).
10 The record demonstrates that class members necessarily would have been exposed
11 to Supple's advertising before purchasing the Beverage.

12    Clearly, the statements in the infomercial differ in some respects from those
13 on the website (or even among different iterations of the infomercial). But a false or
14 misleading advertising campaign need not "consist of a specifically-worded false
15 statement repeated to each and every [member] of the plaintiff class." *In re First*
16 *Alliance Mortgage Co.*, 471 F.3d 977, 992 (9th Cir. 2006). "The class action
17 mechanism would be impotent if a defendant could escape much of his potential
18 liability for fraud by simply altering the wording or format of his misrepresentations
19 across the class of victims." *Id.*; *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D.
20 Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign,
21 common issues predominate.").

22    **(3)**  Supple next argues that common issues do not predominate because the
23 alleged misrepresentations may not have been material to all class members.
24 However, "[u]nder California law, a misrepresentation is material 'if a reasonable
25 man would attach importance to its existence or nonexistence in determining his
26 choice of action.' Materiality is thus an objective standard that may be subject to
27 common proof." *In re Apple, AT & T iPad Unlimited Data Plan Litig.*, No. C-10-
28 02553 RMW, 2012 WL 2428248, at *5 (N.D. Cal. June 26, 2012) (citation omitted);

1   *see also, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)

2   ("Appellants' claims under these California statutes are governed by the 'reasonable

3   consumer' test.").

4          Importantly, "at this stage in the litigation, the issue is not whether the alleged

5   misrepresentations were in fact material. The proper inquiry for class certification

6   purposes is whether plaintiff can use common proof to prove whether a

7   misrepresentation or nondisclosure is material." *Krueger v. Wyeth, Inc.*, Civil No.

8   03CV2496 JAH (AJB), 2011 WL 8971449, at *6 (S.D. Cal. Mar. 30, 2011)

9   (distinguishing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83

10  (2009)).

11         Under the facts of this case, the question is whether a reasonable person

12  contemplating purchase of the Beverage would attach importance to Supple's

13  alleged misrepresentation – *i.e.*, that the Beverage is clinically proven effective for

14  the treatment of joint pain. *See id.* at *4 ("Under the facts of this case the question

15  is:  would a reasonable person contemplating purchase of Wyeth's hormone therapy

16  drugs attach importance to the nondisclosed fact that the drug increases the risk for

17  breast cancer, heart disease, Alzheimers disease, and dementia . . . ."). That answer

18  is subject to common proof.

19         Supple nevertheless asks the Court to weigh whether the alleged

20  misrepresentation, in fact, would be material to certain class members. Common

21  sense dictates that the alleged misrepresentation (practically speaking, that the

22  Beverage would do what it was advertised to do) would be material to not only the

23  reasonable purchaser but every purchaser. *See, e.g., In re Yasmin and Yaz*

24  *(Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-

25  DRH-PMF, 2012 WL 865041, at *10 (S.D. Ill. Mar. 13 2012) (noting that the

26  "drugs at issue" in a related case "purportedly had the opposite effect of their

27  advertised benefits" and that "[r]epresentations or omissions of this nature would

28  clearly be material to putative class members").

1     **(4)**    According to the Ninth Circuit, a "presumption of reliance does not

2    arise when class members 'were exposed to quite disparate information from

3    various representatives of the defendant.'" *Mazza*, 666 F.3d at 596 (citation

4    omitted) ("Here the limited scope of that advertising makes it unreasonable to

5    assume that all class members viewed it.").

6    However, an inference of reliance arises as to the entire class where material

7    misrepresentations have been made to the entire class. *See Stearns v. Ticketmaster*

8    *Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). Because the Beverage was sold only

9    over the telephone and on Supple's website, class members necessarily were

10    exposed to the alleged misrepresentation in Supple's infomercial or on its website.

11    While the individual statements or iterations of the alleged misrepresentation may

12    have differed depending on the specific infomercial or website page, the message

13    was the same. Based on these facts, a presumption of reliance is warranted in this

14    case.

15    Accordingly, Cabral has demonstrated that common issues of fact and law

16    predominate for purposes of Rule 23(b)(3) and established commonality under Rule

17    23(a).

18    **Superiority (Rule 23(b)(3)**

19    Similarly, Cabral has established superiority under Rule 23(b)(3). Supple

20    argues that a class action is not superior where, as here, the defendant offers refunds

21    to dissatisfied customers. But the record evidence demonstrates that during the

22    putative class period Supple has offered at most a sixty-day money-back guarantee

23    and that this does not include processing and handling or shipping. (*See* Apatow

24    Decl. ¶ 44 (Docket No. 60)). Given these limitations, Supple is not offering the

25    "very relief" sought by means of the class action. (*See* Opp. at 24).

26    Supple also argues that an apparent lack of multiplicity of suits undercuts

27    superiority. But such a lack of multiplicity does not necessarily weigh against class

28    certification. *See, e.g., Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191

1   (9th Cir. 2001) ("If the court finds that several other actions already are pending and

2   that a clear threat of multiplicity and a risk of inconsistent adjudications actually

3   exist, a class action may not be appropriate . . . ." (citation omitted)).  Supple's

4   arguments are unavailing.

5   **Rule 23(a)**

6       *Typicality*

7         Likewise, Supple's argument as to typicality fails.  The typicality requirement

8   is a permissive standard.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

9   Cir. 1998).  "[R]epresentative claims are 'typical' if they are reasonably co-

10  extensive with those of absent class members; they need not be substantially

11  identical."  *Id.* at 1020.  Again, Cabral purchased the Beverage in reliance on

12  Supple's alleged misrepresentation as to its effectiveness.  Cabral's claim is

13  "reasonably co-extensive" with those of absent class members who purchased the

14  Beverage after necessarily being exposed to Supple's advertising.  The Court is not

15  persuaded by Supple's arguments that the specific statements on which Cabral

16  allegedly relied, her specific arthritic condition and/or her discontinued use of the

17  Beverage make her claim atypical.

18      *Adequacy*

19        Supple's adequacy argument appears to overlap with its argument as to

20  typicality.  But "[t]o determine whether named plaintiffs will adequately represent a

21  class, courts must resolve two questions:  '(1) do the named plaintiffs and their

22  counsel have any conflicts of interest with other class members and (2) will the

23  named plaintiffs and their counsel prosecute the action vigorously on behalf of the

24  class?'"  *Ellis*, 657 F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020).  "Adequate

25  representation depends on, among other factors, an absence of antagonism between

26  representatives and absentees, and a sharing of interest between representatives and

27  absentees."  *Id.*  Supple has made no showing as to either of these questions.

28

1      Therefore, Cabral has established that she and her counsel meet the

2  prerequisites of Rule 23(a).

3  **The Subsequent Briefing**

4      After the hearing, on December 10, 2012, Supple filed a Statement of Recent

5  Decision in Support of Opposition to Class Certification (the "Statement"). (Docket

6  No. 93). Supple's Statement attached the slip opinion in *Moheb* (cited above) and

7  argued that the court denied class certification in that case because "some of the

8  putative class members relied on the recommendations of doctors or on other

9  outside information in deciding to purchase the product," because the "evidence

10  showed that the product worked for at least some consumers," and "because many

11  customers were satisfied with their purchases." (Statement at 1).

12      On December 11, 2012, Cabral filed a Response to the Statement. (Docket

13  No. 95). Cabral argued that the product at issue in *Moheb* "was sold primarily at

14  retail outlets, which led to issues of class-wide exposure," and that "unlike in *Moheb*

15  there can be little question that the falsity of [Supple]'s uniform marketing message .

16  . . can be determined by classwide proof, namely, complex and expensive scientific

17  evidence." (Response at 1-2).

18      While not binding here, the Court carefully has read and considered the

19  *Moheb* decision. The Court notes that *Moheb* also involved a

20  glucosamine/chondroitin supplement. *Moheb*, slip op. at 1. However, *Moheb* is

21  distinguishable from this case. ***First***, as discussed above, issues of standing and

22  ascertainability do not preclude class certification here. *But see id.* at 3-4 ***Second***,

23  in *Moheb*, "some of the members of the Class never saw or relied upon Defendant's

24  representation that [the relevant product] has been proven to reduce joint pain." *Id.*

25  at 5; *see also id.* at 8. Here, as discussed above, the record demonstrates that class

26  members necessarily would have been exposed to Supple's advertising before

27  purchasing the Beverage, which also warrants a presumption of reliance. ***Third***,

28  unlike in *Moheb*, Supple does not argue on this Motion that "[s]cientific data

1  suggests that [the Beverage] works for some, but may not work as well for others."
2  *Id.* at 5; *see also id.* at 8.

3      ***Finally***, the Court declines to rule that Cabral is an inadequate class
4  representative based on either her specific arthritic condition or her discontinued use
5  of the Beverage, notwithstanding the *Moheb* court's conclusion with respect to the
6  plaintiff in that case. In *Moheb*, the court concluded that the plaintiff "would not be
7  an adequate representative because she had extremely limited experience" with the
8  relevant product, and that she "would not be an adequate representative for those
9  members of the Class that did derive benefits" from the product, "those that used [it]
10 for cartilage protection, or those who purchased [it] for their pets." *See id.* at 6.
11 Furthermore, the court noted that, "unlike other members of the Class who continue
12 to use [the product], she does not have any risk of future harm from the product."
13 *Id.* The court also found that the plaintiff "became class representative in this action
14 through her long-time friendship with the mother of one of her counsel, and that
15 counsel had been researching the possibility of a class action with respect to [the
16 product] prior to [the p]laintiff becoming a client." *Id.* ("While Plaintiff denies that
17 a conflict exists, it is the appearance of a conflict that is inescapable."). Therefore,
18 the ruling as to adequacy in *Moheb* relied on a different factual record.

19                                       **CONCLUSION**

20     Accordingly, the Motion (Docket No. 35) is GRANTED.

21     The Court hereby sets a Scheduling Conference for **March 18, 2013, at 11:00**
22 **a.m.** (*See* Docket No. 99).

23     IT IS SO ORDERED.

24     DATED: February 14, 2013.

25

26

27                               MICHAEL W. FITZGERALD
                              United States District Judge
28

## CERTIFICATE OF SERVICE

I, Brigette Scoggins, declare:

I am a citizen of the United States and employed in Los Angeles County, Los Angeles, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On February 28, 2013, I served a copy of the within document(s): PETITION FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F) on the interested parties in this action addressed as follows:

Milstein Adelman LLP                          *Via Overnight Courier*
Gillian L. Wade, Esq.                          *Attorneys for Plaintiff*
M. Isaac Miller, Esq.
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Tel.: (310) 396-9600
Fax: (310) 396-9635
gwade@milsteinadelman.com
imiller@milsteinadelman.com


Hon. Michael W. Fitzgerald                     *Via U.S. Mail*
U.S. District Judge
U.S. District Court for the Central
District of California
312 N. Spring Street
Los Angeles, CA 90012-4793


☒        by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☒ **(BY MAIL)** By placing such document(s) in a sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of correspondence for mailing with the United States Postal Service, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that the foregoing is true and correct.

Executed on February 28, 2013, at Los Angeles, California.

Brigette Scoggins

306823591.3