Docket No. 13-80030

IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

_____

ARLEEN CABRAL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*PLAINTIFF AND RESPONDENT*,

*VS.*

SUPPLE, LLC,

*DEFENDANT AND PETITIONER*

_____

On Appeal from an Order of the United States District Court
for the Central District of California
The Honorable Michael W. Fitzgerald, Judge
Case No. 5:12-cv-00085 MWF (OPx)

_____

**PLAINTIFF-RESPONDENT'S ANSWER TO PETITION FOR
PERMISSION TO APPEAL ORDER GRANTING CLASS
CERTIFICATION PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

_____

Gillian L. Wade
M. Isaac Miller
**MILSTEIN ADELMAN, LLP**
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: 310.396.9600
Telecopier: 310.396.9635
*Counsel for Plaintiff-Respondent*

# <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT.................................................................1

II.   LEGAL STANDARD FOR FED. R. CIV. P. 23(F) REVIEW.......................3

    A.    A District Court Order Granting Class Certification Is Reviewed For Abuse Of Discretion..............................................................................3

    B.    *Chamberlan* Defines The Standard To Grant Rule 23(f) Review, And That Standard Is Not Met......................................................................4

III.  PETITIONS FOR REVIEW UNDER RULE 23(F) ARE ONLY GRANTED IN "RARE CASES," AND THIS IS *NOT* ONE OF THOSE CASES ..........6

    A.    The "Death Knell" Factor Does Not Apply .........................................6

    B.    There Is No "Manifest Error" In the District Court's Order Granting Class Certification ..................................................................................7

        (1)    The district court correctly held Defendant's unpersuasive "satisfied" customers argument failed to defeat Plaintiff's predominance showing ...................................................................7

        (2)    The district court properly analyzed the "net impression" of Defendant's express advertising claims in granting class certification ...............................................................................12

IV.  CONCLUSION..............................................................................................17

## TABLE OF AUTHORITIES

**Federal Cases**                                                                           **Pages**

*Armstrong v. Davis* (9th Cir. 2001)
    275 F.3d 849 ............................................................................................3, 17

*Campion v. Old Republic Home Protection Co., Inc.* (S. D. Cal. Jan. 6, 2011)
    272 F.R.D. 517.............................................................................................8, 10

*Chamberlan v. Ford Motor Co.* (9th Cir. 2005)
    402 F.3d 952..................................................................3, 4, 6, 7, 9, 12, 17

*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011)
    657 F.3d 970 .....................................................................................................11

*Faralli v. Hair Today Gone Tomorrow* (N.D. Ohio Jan. 10, 2007)
    2007 WL 12066................................................................................................. 8

*Freeman v. Time, Inc.* (9th Cir. 1995)
    68 F.3d 285 ......................................................................................................16

*F.T.C. v. Gill* (C.D. Cal. 1999)
    71 F.Supp.2d 1030..........................................................................................14

*Green v. Green Mountain Cofee Roasters, Inc.* (D.N.J. December 20, 2011)
    279 F.R.D. 275................................................................................................. 8

*Gonzales v. Free Speech Coal.* (9th Cir. 2005)
    408 F.3d 613 .................................................................................................... 3

*Hawkins v. Secuitas Sec. Servs. USA, Inc.* (N.D. Ill. Nov. 16, 2011)
    2011 WL 5598365............................................................................................10

*Hoffman v. Supple, LLC* (D.N.J. 2012)
    2:12-cv-00920-FSH-PS ..................................................................................12

*In re Actimmune Mktg. Litig.* (N.D. Cal. Sept. 1, 2010)
    2010 WL 3463491 ............................................................................................8

*In re Ferrero Litigation* (S.D. Cal. November 15, 2011)
    278 F.R.D. 552.................................................................................................14

*In re First Alliance Mortgage Co.* (9th Cir. 2006)
    471 F.3d 977..................................................................................................16

*In re: POM Wonderful LLC Marketing & Sales Litig.* (C.D. Cal. Sept. 28, 2012)
    2:10-ml-02199-DDP-RZ..............................................................................14

*Johns v. Bayer Corp.* (S.D. Cal. 2012)
    280 F.R.D. 551.............................................................................................15

*Johnson v. General Mills, Inc.* (S.D. Cal. April 20, 2011)
    275 F.R.D. 282.............................................................................................14

*Konick v. Time Warner Cable* (C.D. Cal. Nov. 24, 2010);
    2010 WL 8471923 ....................................................................................8, 10

*Lima v. Gateway, Inc.* (C.D. Cal. 2010)
    710 F.Supp.2d 1000 ....................................................................................16

*Local Joint Executive Trust Fund v. Las Vegas Sands* (9th Cir. 2001)
    244 F.3d 1152.................................................................................................4

*Lozano v. AT&T Wireless Services, Inc.* (9th Cir. 2007)
    504 F.3d 718...................................................................................................4

*Mahtani v. Wyeth* (D.N.J. June 30, 2011)
    2011 WL 2609857.........................................................................................8

*Mazza v. Amer. Honda Motor Co.* (9th Cir. 2012)
    666 F.3d 581........................................................................................ 15, 17

*Messner v. Northshore Univ. Healthsystem* (7th Cir. 2012)
    669 F.3d 802.................................................................................................10

*Moheb v. NutraMax Laboratories Inc.* (C.D. Cal. Sept. 4, 2012)
    2012 WL 6951904 .........................................................................................8

*Parra v. Bashas', Inc.* (9th Cir. 2008)
    536 F.3d 975 ..............................................................................................3, 4

*Pilgrim v. Universal Health Card, LLC* (6th Cir. 2011)
    660 F.3d 943.................................................................................................8

*Prado-Steiman ex rel. Prado v. Bush* (11th Cir. 2000)
  221 F.3d 1266 ...................................................................................... 5, 6

*Stearns v. Ticketmaster Corp.* (9th Cir. 2011)
  655 F.3d 1013 ...................................................................................... 15, 16

*Wal-Mart Stores, Inc. v. Dukes* (2011)
  131 S.Ct. 2541 ......................................................................................... 11

*Waste Mgmt. Holdings, Inc. v. Mowbray* (1st Cir. 2000)
  208 F.3d 288 .............................................................................................. 4

*Whitson v. Bumbo* (N.D. Cal. April 16, 2009)
  2009 WL 151597 ......................................................................................... 8

*Williams v. Gerber Products Co.* (9th Cir. 2008)
  552 F.3d 934 ...................................................................................... 13, 14, 16

## State Cases

*In re Vioxx Class Cases* (2009)
  180 Cal.App.4th 116 ................................................................................... 8

## Federal Statutes

Fed. R. 23(f) ................................................................................................ 6

Fed. R. Evid. 101 ....................................................................................... 10

## Other Sources

2 McLaughlin on Class Actions (5th ed.)
  § 7:11 ......................................................................................................... 4

## I.    PRELIMINARY STATEMENT

On February 14, 2013, Judge Michael W. Fitzgerald, in a well-reasoned decision, certified a California class alleging violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") in connection with Defendant Supple, LLC's ("Defendant") advertising for the Supple beverage ("Supple").  *See* Order Granting Plaintiff Cabral's Motion For Class Certification ("Order") at 2, 13.  Judge Fitzgerald found Defendant's uniform advertising campaign—which every member of the class was necessarily exposed to in purchasing Supple (a direct response product sold only through infomercials and on the internet)—was amenable to certification, because the truth or falsity of Defendant's arthritis claims turns on the science and the experts, which by their very nature are susceptible to class-wide proof.  *See id.* at 7.

Targeting the 50 million individuals in the United States suffering from the debilitating pain and immobility of arthritis, Defendant hawks Supple by expressly claiming the product has the ability to treat all forms of arthritis:

- "If you suffer from joint pain, arthritis, back pain, carpal tunnel, gout, fibromyalgia, or if you just want help losing weight, then this is a show you do not want to miss, so stay with us."

- "Our glucosamine is clinically proven to rebuild damaged cartilage cells.  It actually creates new cartilage cells and protects existing cartilage."

- "It's our chondroitin that's clinically proven effective to reduce joint space narrowing, that's clinically proven to reduce swelling and inflammation, and that protects your joints."

- "So Supple's ingredients do have disease-modifying qualities…Let's be clear, what do you mean by disease-modifying? Disease-modifying for arthritis pain, it's something that completely reverses and halts the disease process."

- "I'm not talking about masking the pain, not pain that just comes and goes. No waiting for months to feel the difference. We're not talking about putting dangerous chemicals into your body. I'm talking about beating your arthritis by rebuilding your joints and restrengthening your body."

EX 17 (quoting text from official transcript of Defendant's "2007 infomercial");[1] Order at 7.

Because Supple is a direct-response product, every consumer is necessarily exposed to Defendant's universally conveyed joint relief message prior to purchasing the product. Moreover, Defendant concedes (as it must) that this is an expert driven case wherein the truth or falsity of its uniform advertising message will ultimately be determined on the basis of scientific evidence common to the entire class. In truth, it is difficult to imagine a false advertising case which is more appropriate for class treatment than the current matter.

On July 17, 2012, Plaintiff filed her motion for class certification, which highlights the aforementioned uniform advertising message and expert driven issues. *See* EX 116-149. Tellingly, although it had nearly four months to file its opposition to Plaintiff's motion, the best argument Defendant could muster in response to Plaintiff's predominance analysis amounted to speculation about the existence of "satisfied" customers. *See* EX 75-78. Judge Fitzgerald considered all the non-binding, distinguishable precedent cited by Defendant in support of this argument, as well as Defendant's so-called "evidence"—consisting solely of

---

[1] All "EX __" references are to page numbers in the Exhibits to Plaintiff-Respondent's Answer to Petition for Permission to Appeal Order Granting Class Certification Pursuant to Federal Rule of Civil Procedure 23(F) filed concurrently herewith.

repeat customer statistics and purported customer testimonials—and correctly held that "the record does not demonstrate that there are a 'substantial number of satisfied customers.'" Order at 5. The order also correctly funds that, even if evidence of satisfied customers did exist, common issues would nevertheless predominate. Order at 6-7.

Judge Fitzgerald's decision to grant class certification was based upon a thorough and detailed review of the underlying briefs and the 100 plus exhibits submitted by the parties, and more than an hour and a half of oral argument. The class certification order, which included significant factual determinations and weighing of the evidence, does not come close to any kind of "manifest error" that would warrant appellate review under Federal Rule of Civil Procedure 23(f). *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959, 962 (9th Cir. 2005). Accordingly, Plaintiff respectfully submits that Defendant's petition for permission to appeal should be denied.

## II.    LEGAL STANDARD FOR FED. R. CIV. P. 23(F) REVIEW

### A.    A District Court Order Granting Class Certification Is Reviewed For Abuse Of Discretion

A district court's decision to certify a class is subject to "very limited" review, and will be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001); *see also Parra v. Bashas', Inc.,* 536 F.3d 975, 977 (9th Cir. 2008) (explaining that the Ninth Circuit must "limit [its] review to whether the district court correctly selected and applied Rule 23's criteria"); *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) ("Abuse of discretion is 'a

highly deferential standard,' under which the appellate court cannot substitute its 'view of what constitutes substantial justification for that of the district court'; rather, the review 'is limited to assuring that the district court's determination has a basis in reason.'"). Abuse of discretion will only be found in three circumstances: (1) reliance on an improper factor; (2) omission of a substantial factor; or (3) a clear error of judgment in weighing the correct mix of factors. *See Parra*, 536 F.3d at 977-78 (citing *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295 (1st Cir. 2000)). In determining whether one of these three circumstances applies, the district court's factual findings as to the applicability of Rule 23 criteria are entitled to the traditional deference given such determinations. *See Local Joint Executive Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1161 (9th Cir. 2001); *see also Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 724-25 (9th Cir. 2007) (explaining that, in reviewing a district court's order on class certification, the Ninth Circuit will "review the district court's factual findings under the clearly erroneous standard").

    **B.**    ***Chamberlan* Defines The Standard To Grant Rule 23(f) Review, And That Standard Is Not Met**

The Ninth Circuit considers three factors in determining whether it is appropriate to hear an appeal under Rule 23(f). *See Chamberlan*, 402 F.3d at 957-60. Although "[t]hese factors are merely guidelines, not a rigid test," *id.* at 960, the Ninth Circuit has never gone outside these factors. *See* 2 McLaughlin on Class Actions § 7:11 (5th ed.) (Standards under Rule 23(f)—Ninth Circuit). The three factors are as follows:

(1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*See Chamberlan*, 402 F.3d at 959.

Defendant's petition only references the first and third factors, "death knell" and "manifest error," respectively. In the context of an order granting class certification, the death-knell factor applies when "the damages claimed would force [the defendant] to settle without relation to the merits of the class's claims." *Id.* at 960. When a "manifest error" is alleged, the Ninth Circuit "will permit an interlocutory appeal only when the certification decision is manifestly erroneous and virtually certain to be reversed on appeal from the final judgment." *Id.* at 962. The error must be "a manifest error of law, as opposed to an incorrect application of law to facts." *Id.* at 959. Accordingly, "[i]t is difficult to show that a class certification order is manifestly erroneous unless the district court applies an incorrect Rule 23 standard or ignores a directly controlling case." *Id.* at 962 (citing *Prado-Steiman*, 221 F.3d at 1275 & n.9).

## III.   PETITIONS FOR REVIEW UNDER RULE 23(F) ARE ONLY GRANTED IN "RARE CASES," AND THIS IS *NOT* ONE OF THOSE CASES

There are "too many class actions filed each year for federal appeals courts practicably to adjudicate class certification decisions on an interlocutory basis as a matter of course." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).   If freely allowed, such appeals would "add to the heavy workload of the appellate courts, require consideration of issues that may become moot, and undermine the district court's ability to manage the class action."   *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). As such, "petitions for Rule 23(f) review should be granted sparingly," in "rare cases." *Id.*; *see also* Fed. R. 23(f), Advisory Committee Notes to 1998 Amendments ("[M]any class certification decisions present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings.").   This is not one of those "rare cases," as neither the "death knell" nor the "manifest error" factor support interlocutory appeal in this matter.

### A.     The "Death Knell" Factor Does Not Apply

Where a defendant seeks appellate review under the "death knell" factor, it must sufficiently demonstrate "that the damages claimed would force a company of its size to settle without relation to the merits of the class's claims." *See Chamberlan*, 402 F.3d at 960.  Here, without offering any supporting evidence, Defendant merely asserts that it "will not have the resources to appeal in the event of an adverse merits ruling."  Petition for Permission to Appeal Order Granting Class Certification Pursuant to Federal Rule of Civil Procedure 23(F)

("Petition") at 3. Given that Defendant has made no showing whatsoever that it lacks the resources to defend this case to a conclusion and appeal if necessary, an interlocutory appeal should not be granted under the "death knell" factor. *See Chamberlan*, 402 F.3d at 960 (declining to grant Rule 23(f) review where defendant's "death knell" allegations were "conclusory" and were "not backed up by declarations, documents, or other evidence demonstrating potential liability or financial condition").

## B.    There Is No "Manifest Error" In The District Court's Order Granting Class Certification

Defendant's unpersuasive "manifest error" argument consists of two parts. First, Defendant asserts the district court committed "manifest error" in failing to hold that Defendant's "evidence" of "satisfied" customers defeats predominance. Second, the petition contends that the net impression analysis in the order granting class certification constitutes "manifest error." These arguments, which were both addressed in the district court's order, are entirely unavailing and are not the proper basis for a Rule 23(f) appeal.

### (1)    The district court correctly held Defendant's unpersuasive "satisfied" customers argument failed to defeat Plaintiff's predominance showing

There are several flaws with Defendant's argument that the district court committed "manifest error" by ignoring the "bedrock legal principle" that the existence of satisfied customers precludes class certification. *See* Petition at 5-6. First, of the cases cited by Defendant in support of this "bedrock" principle, not a *single* case constitutes binding

precedent on the district court, nor do *any* of them involve "repeat purchasers."[2]   The lone

case referencing statements from purportedly "satisfied" customers—which Defendant relies

upon most heavily in its petition—is the slip-opinion issued in *Moheb v. NutraMax*

*Laboratories Inc.*, No. CV 12-3633-JFW (JCx), 2012 WL 6951904 (C.D. Cal. Sept. 4,

2012).[3]   However, in holding that "the existence of economic injury is also not a common

question, because many purchasers are satisfied," the *Moheb* court did not cite to even a *single*

case.   *See, e.g.*, *Moheb*, 2012 WL 6951904, at *4.   The only citation is to a declaration

submitted by defendant, which included purported comments from consumers stating that

Cosamin is "Worth every penny!" and "100% worth it."   *Id.*   As if it even needed to be stated,

these comments provide no insight whatsoever as to the consumer's experience with the

product, and fail to demonstrate what (if any) of the advertised benefits Cosamin actually

---

[2] *See, e.g.*, *In re Actimmune Mktg. Litig.*, No. CD 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011); *Moheb v. NutraMax Laboratories Inc.*, No. CV 12-3633-JFW (JCx), 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012); *Green v. Green Mountain Cofee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. December 20, 2011); *Mahtani v. Wyeth*, No. 08-6255 (KSH), 2011 WL 2609857 (D.N.J. June 30, 2011); *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517 (S. D. Cal. Jan. 6, 2011); *Konick v. Time Warner Cable*, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010); *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 WL 151597 (N.D. Cal. April 16, 2009); *Faralli v. Hair Today Gone Tomorrow*, No. 1:06 CV 504, 2007 WL 12066 (N.D. Ohio Jan. 10, 2007); *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 120, 124-27 (2009).

[3] Defendant asserts that *Moheb* is "nearly indistinguishable" from the instant case.   Appeal at 9.   The district court disagreed, spending nearly 2 pages of the 13 page class certification order distinguishing Defendant's late-filed precedent.   *See* Order at 12-13 ("While not binding here, the Court carefully has read and considered the *Moheb* decision. The Court notes that *Moheb* also involved a glucosamine/chondroitin supplement. However, *Moheb* is distinguishable from this case.") (citation omitted).   Defendant's petition invites the Ninth Circuit to second guess the district court's thorough analysis distinguishing the non-binding order in *Moheb*, but this is not the proper basis for an interlocutory appeal.

provided. This non-binding slip opinion, based on inadmissible hearsay rather than any legal precedent, clearly does not create the type of "bedrock legal principle" touted in Defendant's petition.   In sum, there can be no "manifest error," because Defendant's opposition to the motion for class certification (and supplemental briefing) did not contain any relevant, let alone "directly controlling," case law for the district court to ignore in the first place.  *See Chamberlan*, 402 F.3d at 962 ("It is It is difficult to show that a class certification order is manifestly erroneous unless the district court applies an incorrect Rule 23 standard or *ignores a directly controlling case*.") (emphasis added).

Second, even a cursory review of the district court's order easily dispels the notion that the district court somehow "ignored" any of Defendant's precedent.  *See* Petition at 6.  The district court took the time to carefully analyze all of Defendant's case law, ultimately finding it all to be "distinguishable both factually and legally" from the current matter.  *See* Order at 4-5, 12-13.  Judge Fitzgerald's order also explained that, "even accepting the premise that some repeat customers are satisfied customers (or at the very least that there are individual issues as to why repeat customers purchased the Beverage multiple times), common issues of fact and law still predominate."  *Id.* at 6.  Simply put, despite the fact that Defendant presented the district court with a "raft" of unbinding and largely irrelevant case law, it cannot be disputed that the court considered it all in granting class certification.  *Id.* at 4-6, 12-13.

Along these lines, Defendant's argument that the district court "ignored" Defendant's "uncontradicted evidence" of "satisfied" customers is equally unavailing.  *See* Petition at 6.  As an initial matter, this argument glosses over the crucial fact that the so-called "evidence"

consists entirely of inadmissible hearsay.[4]  Moreover, this argument overlooks the finding in

the district court's order that, although there was an "arguable" inference some consumers

may have been satisfied, "the record does not demonstrate that there are a 'substantial number

of satisfied customers.'"  Order at 5.  This finding distinguishes the instant certification

decision from the *Vioxx*, *Konick*, and *Campion* cases relied upon by Defendant, wherein the

record *evidence* demonstrating predominate individual issues was staggering. [5]  Rather than

---

[4] Defendant's "evidence" of "satisfied" customers consisted entirely of statistics regarding repeat customers—which were not kept in the ordinary course of business, but, rather, prepared *specifically for the litigation*—and portions of redacted emails from Supple's customers, all of which are double hearsay (in some cases triple hearsay) and clearly do not fall within a hearsay exception.  *See* EX 17, 31-59, 74-78, 93-97, 111-115.  While the district court did consider this "evidence" in granting class certification, it need not have done so, because the Federal Rules of Evidence apply equally to Defendant and prohibit it from relying on inadmissible evidence to defeat class certification.  *See* Fed. R. Evid. 101; *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 814 (7th Cir. 2012) ("The fact that defendant is not required to present evidence to defeat class certification does not give that defendant license to offer irrelevant and unreliable evidence."); *Hawkins v. Secuitas Sec. Servs. USA, Inc.*, No. 09 C 3633, 2011 WL 5598365 (N.D. Ill. Nov. 16, 2011) (applying Federal Rules of evidence to defendant's submissions in opposition to class certification, and holding that defendants were basing their argument on hearsay in the absence of an exception under Rule 803).

[5] *See In re Vioxx Class Cases*, 180 Cal.App.4th 116, 120, 124-27 (2009) (in holding that the predominance requirement was not met, the court cited defendant's "impressive quantity of documentation designed to establish that individual, rather than common, issues prevailed," including: (1) declarations from doctors setting forth that the effectiveness and safety of Vioxx in comparison to other pain relievers depended upon numerous patient- and physician-specific issues, and (2) data from larger Third-Party Payors ("TPP") showing they covered prescriptions for Vioxx only if it had been determined that, for each particular patient, Vioxx was safer, or more effective, than traditional pain relievers); *Konick v. Time Warner Cable*, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) (Plaintiffs alleging TWC's marketing materials misrepresented that there would be no price increases or service interruptions after TWC acquired Adelphia's customer accounts were deemed atypical, and class certification denied, where Defendant presented affirmative evidence demonstrating that "a large component of the proposed class did not experience any raises in price or deprivations in service" and would

"ignore" Defendant's inadmissible "evidence," the district court fully analyzed it and simply found it unpersuasive. *Id.* Thus, even under the precedent cited in Defendant's petition, this is more than sufficient to meet the "rigorous analysis" standard under Rule 23. *See* Petition at 6 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 974, 980-82 (9th Cir. 2011)).

Finally, the assertion that the district court's order constituted "manifest error" because the "satisfied" customer argument was not contradicted with evidence of consumer complaints is meritless. *See* Petition at 11. As in its opposition to the motion for class certification, Defendant does not cite *any* authority for the proposition that a plaintiff in a false advertising case has the burden to present consumer complaints in order to meet Rule 23's certification requirements. *See, e.g.*, Petition at 11; EX 77. This is not surprising, because no such authority exists. Moreover, in the same paragraph that it criticizes Plaintiff for supposedly producing "*no evidence* of complaints about Supple's effectiveness," Defendant admitted that Plaintiff *did*, in fact, present evidence of consumer complaints: namely, Plaintiff Arlene Cabral's experience with Supple (which provided her with none of the advertised benefits) and the refund log consisting of 10,220 refunds, the overwhelming majority of

---

have no right to recover on the asserted legal claims); *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517 (S. D. Cal. 2011) (class certification denied where insured contended insurer made misrepresentations and omissions regarding its claim handling practices to every person who purchased a home warranty plan, and insurer presented evidence that most class members' claims under the warranty policy were covered (notwithstanding the alleged unlawful delegation of coverage decisions), and Plaintiff conceded that denial of a claim did not, in and of itself, establish a misrepresentation occurred).

which requested their money back because they received "No Results" or simply did not want the product.  *See* Petition at 11 (emphasis in original); *see also* EX 12.  Additionally, as pointed out in Plaintiff's reply in support of its motion for class certification, not only are there other consumer complaints, there was also another class action lawsuit filed in 2012 alleging Defendant's marketing and advertising violates New Jersey's consumer protection act.  *See* EX 12 n. 3 (citing *Hoffman v. Supple, LLC*, No. 2:12-cv-00920-FSH-PS (D.N.J. 2012) (complaint filed January 12, 2012)).

Defendant utterly failed to demonstrate how the district court committed a "manifest error of law" with respect to its so-called "bedrock legal principle" and "uncontradicted evidence" of "satisfied" customers.  Accordingly, Defendant's petition to appeal must be rejected.  *See Chamberlan*, 402 F.3d at 959, 962.

> **(2)** **The district court properly analyzed the "net impression" of Defendant's express advertising claims in granting class certification**

Defendant's argument that the district court improperly adopted Plaintiff's "particular and peculiar interpretation" of Supple's advertising borders on nonsensical.  All of the advertising claims at issue in this case are *express*, not implied, so there is no need for interpretation.  *See* EX 17-18, 126-132, 151-154, 156.  To this end, there can be little question what Defendant means when it claims in its infomercials that Supple's ingredients are "[d]isease-modifying for arthritis pain, it's something that completely reverses and halts the disease process" or when it states Peter Apatow is an "arthritis survivor" who was able to

completely relieve his debilitating arthritis pain simply by taking Supple.[6]  *See* EX 17-18, 151-154.  Moreover, to the extent the district court addressed a particular meaning of the advertising at issue, this meaning is clearly in line with the position Defendant has taken throughout this litigation, namely: (1) Defendant's own counsel confirmed the pervasive "comfort, lubricate, & rebuild your joints" claim—an advertising theme featured prominently in each of Defendant's infomercials, across all of its internet advertising, and on the Supple labeling—means "*Supple effectively treats arthritis*"; and (2) in defeating Plaintiff's motion to compel earlier in the litigation, Defendant argued *the only reason anyone would purchase Supple is because they suffer from arthritis*.  *See* EX 19-20, 158-165.  Against this backdrop, Defendant cannot realistically argue the district court committed "manifest error" in determining the net impression of Defendant's advertising to be "that the Beverage is clinically proven effective in treating joint pain."  Order at 7.

Setting that glaring deficiency aside, the foundation of Defendant's "net impression" argument is its assertion that the district court "was not entitled to interpret the meaning of the ads itself—let alone deem that meaning the sole and exclusive uniform message necessarily perceived by *all* class members."  Petition at 15 (citing *Williams v. Gerber Products Co.*, 552

---

[6] From December 2, 2007 (the beginning of the class period) to October 28, 2011, Defendant only aired one infomercial, the "2007 infomercial."  *See* EX 17, 107.  The only other version of Defendant's infomercial that aired during the class period, the "2011 infomercial," relayed virtually identical express claims regarding the purported benefits of Supple, and ups the ante slightly by portraying Defendant's CEO, Peter Apatow, as an "arthritis survivor" who suffered from severe immobilizing arthritis for decades until he started taking Supple which completely relieved his arthritis pain.  *See* EX 17-18, 107-108.  Collectively, direct phone sales from Defendant's infomercials accounted for 86% of the $10.3 million in revenue from sales of Supple in California during the class period.  *See* Order at 8.

F.3d 934, 938-39 (9th Cir. 2008)) (emphasis in original). However, in false advertising cases such as this one, courts *routinely* interpret the overall message conveyed by the advertising claim(s) at issue. *See F.T.C. v. Gill*, 71 F.Supp.2d 1030, 1043 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001) ("In deciding questions of ad interpretation, the Court looks at the 'overall net impression made by the advertisement in determining what message may reasonably be ascribed to it.'"); *In re: POM Wonderful LLC Marketing & Sales Litig.*, No. 2:10-ml-02199-DDP-RZ, Dkt. No. 111, at 8 (C.D. Cal. Sept. 28, 2012) ("*In re: POM Wonderful LLC*") (order certifying class where 596 different advertisements ran in 9 different kinds of media during the class period, and plaintiffs challenged only a subset of claims regarding the health benefits of POM Juice);[7] *In re Ferrero Litigation*, 278 F.R.D. 552, 559-60 (S.D. Cal. November 15, 2011); *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288-89 (S.D. Cal. April 20, 2011). In fact, in *Williams*—the very case Defendant relies upon to support its flawed assertion—the Ninth Circuit explicitly interpreted the meaning of the express and implied advertising claims at issue, ultimately holding, "there are a number of features on the packaging [defendant] used for its Fruit Juice Snacks product which could likely deceive a reasonable consumer." *See Williams*, 552 F.3d at 939-40. Accordingly, even if some interpretation of Defendant's

---

[7] The defendant in *In re: POM Wonderful LLC Marketing & Sales Litig.*—which had a *significantly* stronger argument that its advertising message varied over time and across different media than Defendant does here—petitioned to appeal the class certification order, arguing that no class could be certified where there were numerous materially disparate advertisements communicated to different audiences. *See In re: POM Wonderful LLC Marketing & Sales Litig.*, No. 12-80192, *Dkt.* 1-3, at 4-5, 11-17 (9th Cir. October 12, 2012). The Ninth Circuit denied the petition to appeal. *See In re: POM Wonderful LLC Marketing & Sales Litig.*, No. 12-80192, *Dkt.* 8 (9th Cir. December 17, 2012).

express advertising claims was necessary (and it was not), the district court's order still would not run afoul of directly controlling precedent.

Having already misapplied *Williams*, Defendant next states, "[t]he question is not, as the court framed it, whether every consumer was exposed to Defendant's advertising." Petition at 16. Once again, Defendant is incorrect. Indeed, it is well-established in Ninth Circuit and California precedent, that classwide exposure to a uniform advertising campaign is *exactly* the question a district court is required to analyze in determining whether or not to grant class certification. *See Mazza v. Amer. Honda Motor Co.*, 666 F.3d 581, 595-96 ("[W]e agree with Honda's contention that the misrepresentations at issue here do not justify a presumption of reliance. This is so primarily because it is likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited…. In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading."); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (explaining that the predominance requirement is not met where it can be established that putative class members "were exposed to quite disparate information from various representatives of defendant"); *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557-58 (S.D. Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign, common issues predominate."). Clearly,    the district court did not commit any error, let alone "manifest error," in determining whether class members were "exposed" to Defendant's blatantly false and misleading advertising.

The remaining arguments in Defendant's petition similarly fail to demonstrate any "manifest error" on the part of the district court. Defendant spends several pages desperately attempting to show that the "numerous varied messages in [its] ads changed over time and differed by medium," but, in doing so, it fails to demonstrate how the district court committed error in ruling (on the basis of well-established 9th Circuit precedent) that the purported differences in the ads did not preclude a finding of predominance.[8] *See* Order at 8 (citing *In re First Alliance Mortgage Co.*, 471 F.3d 977, 992 (9th Cir. 2006)); *id.* at 10 ("While the individual statements or iterations of the alleged misrepresentation may have differed depending on the specific infomercial or website, the message was the same."). Moreover, Defendant cannot establish any "manifest error" on the part of the district court by isolating a single advertising claim and asserting (incorrectly) that this claim amounts to mere puffery. *See Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000, 1007-08 (C.D. Cal. 2010) (citing *Williams*, 552 F.3d at 939 n.3) ("Several of the representations allegedly made by Gateway, considered in isolation, might amount to mere puffery.... These statements, however, cannot be

---

[8] As part of this argument, Defendant contends (without establishing) that consumers made the decision to purchase Supple on the basis of "pre-conceived notions about the benefits and efficacy of [glucosamine and chondroitin]." Petition at 17. Defendant's attempt to shift the focus of the analysis away from the "reasonable consumer," and redirect it to what particular consumers *may* have believed about glucosamine and chondroitin prior to purchasing Supple—which, in any matter, is entirely unfounded because it is based solely on Defendant's own speculation, not any evidence—is contrary to prevailing California law. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer."); *Stearns v. Ticketmaster Corp.*, 655 F.3d at 1020 (citing the well-established "California rule 'that relief under the UCL is available without individualized proof of deception, reliance, and injury'").

considered in isolation because they contribute to the deceptive context of the advertising as a whole."). Finally, Defendant's one-line argument that the district court committed "manifest error" by failing to apply *Mazza* is completely undermined by the fact that the class certification order specifically cites *Mazza* in holding that "[b]ecause the Beverage was sold only over the telephone and on Supple's website, class members necessarily were exposed to the alleged misrepresentation in Supple's infomercial or on its website." Order at 10 (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012)). Given that Defendant has conceded all class members were exposed to its uniform advertising message,[9] there can be no argument that the district court misapplied *Mazza*.

In light of the express arthritis claims conveyed throughout Defendant's marketing and advertising, the district court clearly acted within its discretion in determining all class members were necessarily exposed to a uniform message in purchasing Supple. Accordingly, appellate review under Rule 23(f) is not appropriate in this matter. *Armstrong*, 275 F.3d at 867; *Chamberlan*, 402 F.3d at 959, 962

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Petition.

---

[9] *See* Petition at 16 n. 9 ("Plaintiff also reformulated the issue as whether all purchasers were 'exposed' to the ads. But Defendant never argued that purchasers might not have seen any advertising materials.").

Date: March 11, 2013                    RESPECTFULLY SUBMITTED,


By:    /s/ Gillian L. Wade
        Gillian L. Wade
        M. Isaac Miller
        **MILSTEIN ADELMAN, LLP**
        2800 Donald Douglas Loop North
        Santa Monica, California 90405
        Telephone: 310.396.9600
        Telecopier: 310.396.9635
        *Counsel for Plaintiff-Respondent*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Opposition complies with the page limitations set forth in Fed. R. App. P. 5(c) because the brief does not exceed 20 pages, exclusive of the tables and certificate of service.

This Opposition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirement of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: March 11, 2013

                /s/ Gillian L. Wade
                Gillian L. Wade

**MILSTEIN ADELMAN, LLP**
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: 310.396.9600
Telecopier: 310.396.9635
gwade@milsteinadelman.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed March 11, 2013.


/s/ Gillian L. Wade

Gillian L. Wade

**MILSTEIN ADELMAN, LLP**
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: 310.396.9600
Telecopier: 310.396.9635
gwade@milsteinadelman.com